UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ANDI KRAJA,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>BELLAGIO, LLC, *et al.*,<br><br>　　　　　Defendants. | Case No. 2:15-cv-01983–APG–NJK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>(ECF No. 17) |

　　　　Plaintiff Andi Kraja worked as a food server at Circo restaurant in the Bellagio Hotel & Casino. He alleges that he was subjected to years of harassment and eventually demoted because of his ethnicity. He brings claims for hostile-work environment and retaliation under Title VII, discrimination and retaliation under § 1981, and state-law claims for intentional infliction of emotional distress and intentional interference with prospective economic advantage.

　　　　Defendants move to dismiss on several bases. I grant their motion in part and deny it in part. I dismiss Kraja's complaint for lack of subject-matter jurisdiction with respect to all Title VII claims except his hostile-work environment claim and his claim that defendants intentionally failed him on a work-performance test because of his Albanian descent. I also dismiss Kraja's § 1981 claims with prejudice because he withdrew them. *See* ECF No. 17 at 2. Finally, I dismiss both of Kraja's state-law claims with leave to amend because portions of both claims are either untimely or implausible.

**I.　BACKGROUND**

　　　　Kraja is a white Caucasian male of Albanian descent who began working as a food server at Circo restaurant in the Bellagio Hotel & Casino on January 21, 2011. ECF No. 11 at ¶¶ 13, 14. He alleges his manager, defendant Vincent Rotolo, repeatedly harassed him because of his heritage, saying "Albanians are lazy, conniving, and thieves." *Id.* at ¶ 17. Kraja reported

Rotolo's remarks to the restaurant's general manager, Fabian Forlini. *Id.* But Forlini "shrugged [the complaints] off," because "Rotolo is from New York and he has the New Yorker attitude." *Id.*

Kraja alleges that the harassment escalated when Rotolo learned about Kraja's complaints. *Id.* at ¶ 19. On November 19, 2012, Kraja was serving a large party of guests and discovered that items had been left off the check that only Rotolo could add. *Id.* Kraja asked Rotolo to add the items but Rotolo avoided Kraja. *Id.* The guests grew impatient and Kraja insisted that Rotolo assist him. *Id.* Rather than comply with Kraja's request, Rotolo shouted in response, "You fucking Albanians!" *Id.*

The following day, Kraja asked Forlini to document his complaints about Rotolo and "follow up with appropriate action." *Id.* at ¶ 21. If Forlini refused, Kraja said he would seek help from human resources. *Id.* Forlini told Kraja not to contact human resources and that he would take care of the matter himself. *Id.* But on December 2, 2012, Rotolo started yelling at Kraja while he was serving guests in a private dining area. *Id.* Rotolo came within inches of Kraja's face, shoved him, forced him into the corner of a small room, and blocked the exit with his body. *Id.* When Kraja finally escaped, he asked another manager, Antonio Callea, to call security. *Id.* But Callea refused to call until the end of Kraja's shift. *Id.*

When Forlini learned about the incident the next day, he appeared to be upset but he did nothing to stop the harassment. *Id.* at ¶ 22. Instead, Kraja alleges that Forlini joined in the harassment and intentionally gave Kraja short notice about upcoming shifts to increase the likelihood that he would be late and could eventually be terminated. *Id.* at ¶ 23. Kraja also alleges that Forlini intentionally offered shifts to more junior servers to prevent Kraja from working. *Id.*

Kraja reported these issues to Jessica Harbaugh (the human resources representative), Dominque Bertolone (the director of food and beverage), and Jose Alvarez (the culinary union shop steward). *Id.* at ¶ 24. Harbaugh and Bertolone resolved the scheduling issues but did not address the root of the problem, Rotolo's alleged racial discrimination. *Id.* at ¶ 25. As a result,

Rotolo allegedly recruited Callea to join in the harassment. *Id.* at ¶ 26. Kraja alleges that Callea intentionally over-seated Kraja's section to undermine Kraja's ability to serve his customers. *Id.*

At this point, Kraja began experiencing "severe depression." *Id.* at ¶ 27. He gained 63 pounds, became physically ill before reporting to work, and withdrew from his social life. *Id.* On May 29, 2013, Kraja applied for a position at a restaurant in Caesars. *Id.* at ¶ 28. Management at Caesars interviewed Kraja and informed him that he "would be a great addition." *Id.* But Kraja was later told that "[a]fter speaking to your Manager Vincent Rotolo we won't be able to continue with your application." *Id.*

On June 12, 2013, Rotolo instructed Kraja to complete tasks that were not part of his job description, including cleaning crevices around the restaurant's doors with a sharp knife and doing other servers' side work. *Id.* at ¶ 29. He also took Kraja into a refrigerator in the kitchen, accused him of breaking it, and yelled, "What's wrong with the light?" *Id.*

Because Kraja's prior complaints to the human resources department did not stop the harassment, Kraja contacted Randy Morton, Bellagio's Chief Operating Officer and President. *Id.* at ¶ 31. On June 15, 2013, Kraja met with Morton, Bertolone, and Alvarez and described how Rotolo, Forlini, and Callea harassed him. *Id.* at ¶ 32. Weeks passed with no investigation and Rotolo, Forlini, and Callea continued to harass Kraja. *Id.* at ¶ 33.

Kraja submitted an online application to a transfer to Prime Steakhouse, another restaurant at the Bellagio. *Id.* at ¶ 34. But when he contacted human resources to find out whether he would be able to transfer, he was told that his application was not in the system and only a manager could have removed it. *Id.* One of Kraja's former managers from a different restaurant called Prime Steakhouse to recommend Kraja for the position. *Id.* But Kraja's application was rejected and a server with less experience was hired. *Id.*

In November 2013, Daniela DeGrazia replaced Rotolo as one of Circo's assistant general managers, but Callea continued to harass Kraja. *Id.* at ¶ 36. Kraja allegedly reported Callea to DeGrazia many times but nothing was done. *Id.*

Kraja alleges that on January 6, 2014, he was falsely accused of threatening another

employee and escorted from the restaurant by security. *Id.* at ¶ 37. Kraja contacted Bertolone and Harbaugh, explained that he had been falsely accused, and was allowed to return to work three days later. *Id.* He then filed a formal grievance with the Culinary Union along with union shop steward Monique Smith. *Id.* at ¶ 38. Kraja was made a union steward to convey to Circo's management that the harassment "would not be tolerated or swept under the proverbial rug." *Id.* at ¶ 39.

On February 6, 2014, DeGrazia gave Kraja a "write-up" because guests had complained about his service. *Id.* at ¶ 40. When Kraja asked DeGrazia about the incident, she informed him that it had occurred on January 21 and that she wanted Kraja to return the customer's tip to them. *Id.* Kraja immediately recalled the incident and informed DeGrazia that it was Callea's doing and reminded DeGrazia that he had already spoken to her about Callea's actions. *Id.* DeGrazia said that she remembered and would remove the "write-up" from his personnel file. *Id.* But the write-up was never removed and Callea was not reprimanded. *Id.*

In June 2014, Kraja reported to work and saw a large sign reading "FAT ANDY" at Server Station 5. *Id.* at ¶ 42. Kraja asked DeGrazia to remove the sign, but the sign was not removed. *Id.* Kraja contacted Smith and Harbaugh again to discuss the harassment. *Id.* DeGrazia was subsequently transferred to a different restaurant but the Fat Andy sign remained posted until Circo closed on September 28, 2014. *Id.*

On July 25, 2014, Kraja told a hostess that one of his guests would like to move to a different section in the restaurant. *Id.* at ¶ 44. In response, Kraja received another write-up for "refusing service to the guest." *Id.*

A few months later, management announced that some of Circo's staff would be transferring to a different restaurant and would be assessed before the transferred occurred. *Id.* at ¶ 45. Kraja was given a manual to study and told that he and other severs would train at the Culinary Training Academy for 6 to 8 weeks. *Id.* at ¶ 46. On February 2, 2015, Kraja took a written test, which he passed, and completed an audition, which he failed. *Id.*

On February 27, 2015, Kraja discovered that he had not been offered a position with the

new restaurant. *Id.* at ¶ 48. He became ill and presented at Summerlin Hospital Urgent Care, where he was diagnosed with severe anxiety attacks and prescribed medicine. *Id.* at ¶ 49.

On March 5, 2015, he filed another grievance with the culinary union. *Id.* at ¶ 50. A meeting was held but union representatives and Bellagio management refused to address Kraja's concerns regarding the years of harassment. *Id.* Kraja then met with the union director and the union attorney. *Id.* His complaints were not addressed and Kraja was eventually demoted to the Banquets C list, where shifts are not guaranteed. *Id.*

## II.     ANALYSIS

A properly pleaded complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a complaint must "contain [ ] enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 696 (internal quotation marks and citation omitted). I accept as true all well-pleaded facts and construe them in the light most favorable to the nonmoving party. *Zadrozny v. Bank of N.Y. Mellon*, 720 F.3d 1163, 1167 (9th Cir. 2013) (citations omitted).

### A.     Administrative Exhaustion

Before filing a Title VII claim, a plaintiff must exhaust his administrative remedies. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002), as amended (Feb. 20, 2002) (citing *E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994)). If a plaintiff does not file a timely administrative charge, or if his complaint alleges wrongdoing that falls outside of the charging document or the EEOC's investigation, then the plaintiff failed to exhaust his administrative remedies. *Id.* (discussing scope); *Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1174 (9th Cir. 1999) (discussing timing).

Defendants argue that Kraja failed to exhaust his administrative remedies because his complaint alleges wrongdoing that was not administratively charged. Specifically, the administrative charge alleges that six managers (excluding Rotolo, Forlini, and Callea) created a hostile work environment and discriminated against Kraja between June 2014 and May 2015 by denying him a transfer, issuing him written discipline, and failing him on the work performance test. *See* ECF No. 17 at Ex. C. By contrast, the complaint names Rotolo as a defendant and alleges that Rotolo, Forlini, Callea, and other managers discriminated against between 2011 and 2015 for additional acts not identified in the charge. *See generally* ECF No. 11. Kraja responds that he properly exhausted his administrative remedies because each discrete act was part of a continuing violation and the uncharged acts are "reasonably related" to the acts that were timely charged.

Kraja's argument intertwines two distinct legal concepts. The first is the continuing-violations doctrine, which the Ninth Circuit adopted in *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918 (1982). In *Williams*, twelve named plaintiffs alleged that their employer discriminated against current and former black and female employees by implementing a policy that based job assignments, transfers, and promotions on race and sex. *Id.* at 922. In deciding whether the named plaintiffs had timely exhausted the class plaintiffs' administrative remedies, the court stated that "a systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period." *Id.* at 924 (citation omitted).[1]

The second concept Kraja relies on is known as the "like or reasonably related" standard, which courts in the Ninth Circuit apply to determine if a plaintiff exhausted remedies for allegations that were not contained in the administrative charge. *See B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002). In *B.K.B.*, a white female police officer filed an administrative charge that alleged race, sex, national origin discrimination, and harassment "of a

---

[1] In *Green v. Los Angeles County*, the Ninth Circuit elaborated on the continuing-violations doctrine and determined that "[a] continuing violation may . . . be established not only by demonstrating a company-wide policy or practice, but also by demonstrating a series of related acts against a single individual." 883 F.2d 1472, 1480 (9th Cir. 1989).

verbal nature" and "further harassment." *Id.* at 1100. But after the administrative agency issued a right-to-sue letter, the police officer commenced an action alleging sexual harassment. *Id.* at 1096. In deciding whether sex discrimination and "further harassment" are "like or reasonably related" to a claim for sexual harassment, the Ninth Circuit laid out the following framework:

> In determining whether a plaintiff has exhausted allegations that she did not specify in her administrative charge, it is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred. In addition, the court should consider plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case.

*Id.* at 1100.

Kraja reads *Williams* with *B.K.B.* to stand for the proposition that the narrow class of discriminatory acts listed in his administrative charge exhausted his administrative remedies for all of the discriminatory acts contained in the complaint, regardless of when they occurred. But the Supreme Court's decision in *National Railroad Passenger Corporation v. Morgan* requires a different result.

In *Morgan*, an Amtrak employee filed an administrative charge alleging that he was "consistently harassed and disciplined more harshly than other employees on account of his race." 536 U.S. 101, 105 (2002). He filed claims for discrimination, retaliation, and hostile-work environment. *Id.* at 104. Although some of the acts of discrimination and retaliation occurred within 300 days of his administrative charge, many occurred before that. *Id.* at 106. The Ninth Circuit allowed Morgan's complaint to proceed on all acts of discrimination and retaliation because the older acts were "sufficiently related" to the acts that were timely charged. *Id.* But the Supreme Court reversed, holding that discrimination and retaliation claims are "different in kind" from hostile-work environment claims and, therefore, subject to different standards when it comes to timing and exhaustion. *Id.* at 115.

Because claims for retaliation and discrimination are based on "discrete acts"—like "termination, failure to promote, denial of transfer, or refusal to hire"—they must be timely

charged or are waived. *Id.* at 113–14. This is true "even when [those discrete acts] are related to acts alleged in timely field charges." *Id.* at 113. By contrast, claims for hostile-work environment by "[t]heir very nature involve[] repeated conduct" that occurs over the course of time. *Id.* at 115. A hostile-work environment "cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* at 115 (citation omitted). As a result, courts may consider individual acts that "fall outside the statutory time period" when determining liability. *Id.* at 117.

Accordingly, the Supreme Court held that Morgan could bring claims for retaliation and discrimination only for acts that occurred within 300 days of his administrative charge. "All prior discrete discriminatory acts are untimely filed and no longer actionable." *Id.* at 115. It also held that Morgan could bring a claim for hostile-work environment based on incidents that occurred before and during the 300-day period so long as some component acts of the hostile-work environment were timely charged. *Id.* 120–21.

Kraja's administrative charge requires a similar result. On May 29, 2015, he filed a charge with the Nevada Equal Rights Commission, alleging that between June 2014 and May 2015, he was subjected to a hostile-work environment and discriminated and retaliated against because defendants denied him a transfer, issued him written discipline, and failed him on a work-performance test. *See* ECF No. 17 at Ex. C. But Kraja's complaint here states claims of a hostile-work environment[2] and discrete acts of discrimination and retaliation that appear to have occurred as far back as 2011. *See* ECF No. 11 at ¶¶ 14, 17, 18.

Because Kraja filed his administrative charge on May 29, 2015, the only discriminatory and retaliatory acts that are actionable are those contained in the administrative charge that occurred 300 days before May 29, 2015 (i.e., after August 1, 2014). *See Morgan*, 536 U.S. at 114–15. Defendants argue that those acts are limited to Kraja's allegations that defendants denied

---

[2] Although Kraja's complaint does not contain a claim that is styled "hostile-work environment," both parties read the complaint as containing a hostile-work environment claim so I treat the complaint as stating one. *See* ECF No. 11 at ¶ 15 (alleging that he was subjected to a hostile-work environment); ECF No. 22 at 7 (stating that his complaint contains a hostile-work environment claim).

him a transfer, issued him written discipline, and failed him on a work-performance test. ECF No. 17 at 8.  But the complaint alleges that the transfer denial and written discipline occurred sometime in 2013, and that the defendants disciplined Kraja in writing on February 6, 2014 and July 25, 2014. *See* ECF No. 11 at ¶¶ 34, 40–44.  Accordingly, the only discriminatory act Kraja timely exhausted is his allegation that defendants intentionally failed him on a work-performance test, which allegedly occurred sometime after July 2014. *See* ECF No. 11 at ¶ 45.  I therefore dismiss Kraja's complaint for failure to exhaust his administrative remedies with respect to all claims except his hostile-work environment claim and his claim that defendants intentionally failed him on a work-performance test because of his Albanian descent.

### B.     National-Origin Discrimination

To state a claim for race or national-origin discrimination, a plaintiff must plead that (1) he belongs to a protected class, (2) he was qualified for his position, (3) he was subject to an adverse employment action, and (4) similarly situated individuals outside his protected class were treated more favorably. *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  Defendants argue that Kraja failed to plausibly allege a claim for race or national-origin discrimination.  Having determined that the only timely claim is Kraja's allegation that defendants intentionally failed him on a work-performance test, I limit my review to that claim.  Defendants argue that this claim is implausible because the complaint contains no facts showing that Kraja was discriminated against because he is Albanian.  I disagree.

Kraja alleges that he was the only Albanian server at the restaurant and that Rotolo repeatedly used ethnic slurs, said "Albanians are lazy, conniving, and thieves," and yelled "You fucking Albanians!"  Kraja further alleges that he was singled-out by Rotolo because of his ethnicity, that he was shoved into a corner, and that Kraja repeatedly complained to management about the mistreatment.  In response to his complaints, Kraja alleges that he experienced additional harassment, lost shifts, was denied a job transfer, was required to do other servers' side work, was demoted, and was given a failing grade on a work-performance test.

At this stage, these allegations provide a backdrop that plausibly shows that Kraja's managers failed him on the work-performance test because of his Albanian descent and because he complained about discriminatory conduct. Defendants argue that Kraja cannot use Rotolo's slurs to show that the subsequent adverse-employment actions occurred because of Kraja's Albanian descent. Defendants reason that the allegations against Rotolo were not administratively exhausted and are therefore barred. Although the factual allegations from 2011 through July 2015 may not be used as the basis for an independent claim for discrimination because they were not timely exhausted, they may be used as background information to support a timely claim for discrimination. *Morgan*, 536 U.S. at 113 (stating that a plaintiff may use "prior [discriminatory] acts as background evidence in support of a timely claim").

I am also unpersuaded by defendants' argument that Kraja's complaint fails to plausibly allege that other similarly situated coworkers were treated more favorably. Kraja alleges that he was the only Albanian server and that he was subjected to years of mistreatment because of his ethnicity and complaints to management. He also alleges that he was the only server at the restaurant to pass the written portion of the test but fail the performance portion of the test. ECF No. 11 at 47. Together, these allegations are sufficient to show that other severs were treated more favorably than Kraja, even if other workers were occasionally mistreated.[3] I therefore deny the defendants' motion to dismiss with regard to Kraja's claim that defendants intentionally failed him on the work performance test because of his ethnicity.

### C.     Hostile-Work Environment

To state a hostile-work environment claim, Kraja must allege that "(1) [he] was subjected to verbal or physical conduct because of [his Albanian ethnicity], (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment." *Johnson v. Riverside Healthcare*

---

[3] Defendants argue that Kraja pleaded himself out of court by stating in an exhibit that other servers were also subjected to a hostile-work environment. Even if other workers were subjected to a hostile-work environment, it does not follow that other servers were not treated more favorably.

*Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (citation omitted).  In considering whether the discriminatory conduct was "severe or pervasive," I look to "all the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance.'" *Id.* (citations omitted).  Because hostile-work environment claims involve repeated conduct that can occur over a series of years, I may consider acts that occurred outside of the statutory-filing period for purposes of liability. *Morgan*, 536 U.S. at 115–17.

Defendants argue that Kraja's complaint does not plausibly show that he was subjected to a hostile-work environment because of his ethnicity and that, even if it did, the allegations regarding Rotolo's racial slurs cannot be considered because they were not administratively exhausted.  As stated above, Kraja's complaint plausibly alleges that he was subjected to years of harassment that began in 2011 with Rotolo's remarks that "Albanians are lazy, conniving, and thieves."  Kraja reported Rotolo to management on multiple occasions and experienced additional harassment in response, including being shoved into a corner by Rotolo.  Under *Morgan*, it is of no import that Kraja failed to administratively charge the allegations against Rotolo.  Because both Kraja's charge and complaint allege that the hostile-work environment began in 2011 and continued through 2015, I may consider the component parts of the hostile-work environment that were not timely charged. *Morgan*, 536 U.S. at 115–17.  I therefore deny the defendants' motion to dismiss with regard to Kraja's hostile-work environment claim.

### C. Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress, a plaintiff must allege "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev. 2000).

The defendants first argue that Kraja's emotional distress claim must be dismissed because Nevada's antidiscrimination statute, § 613.330, preempts common law tort claims and

provides the exclusive remedy for discrimination allegations.  I have previously my disagreement with this argument. *See Wilson v. Greater Las Vegas Ass'n of Realtors*, No. 2:14–cv–00362–APG–NJK, 2015 WL 1014365, at *4 (D. Nev. Mar. 9, 2015) (citing *Burns v. Mayer*, 175 F. Supp. 2d 1259, 1267 (D. Nev. 2001)); *see also Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1094 (9th Cir. 2011) ("Nevada courts will not construe a statute as eliminating a common law cause of action unless the statute unambiguously requires that result.") (citations omitted).  The defendants have not persuaded me to change my mind here.

Defendants next assert that a number of Kraja's allegations supporting his emotional distress claim are barred by Nevada's two-year statute of limitation.  I agree.  Kraja commenced this action in September 2015 and his claim for emotional distress includes allegations from 2011. *See* ECF No. 11 at ¶¶ 14, 90.  He responds that these allegations are timely because his emotional distress claim is a continuing tort.  I am unpersuaded.

Under the continuing-tort doctrine, a claim will not be barred by the statute of limitations if the tort involves continuing wrongful conduct that is timely alleged. *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002) (citation omitted).  But the doctrine does not apply to discrete acts. *Id.*; *see also Lewis v. US W. Commc'ns, Inc.*, 67 F.3d 307 (9th Cir. 1995) ("Wrongful acts which are separate and wholly dissimilar are separate causes of action and the statute of limitations begins to run from the time of the commission of each wrongful act.").  The doctrine applies only where there is "no single incident" that can "fairly or realistically be identified as the cause of significant harm." *Id.* (citation omitted).

The doctrine is inapplicable to Kraja's claim because he alleges a series of discrete acts that can fairly be identified as the cause of his harm.  For instance, he alleges that Rotolo inflicted emotional distress on him by using ethnic slurs in 2011 and verbally assaulting him in 2012. *See* ECF No. 11 at ¶ 90.  He also alleges that other waiters inflicted emotional distress by posting a sign reading "FAT ANDY" in 2014. *Id.* And he alleges that different mangers inflicted emotional distress by refusing to address Rotolo's racial slurs and preventing him from transferring to a different restaurant. *Id.*

Because each of these acts is distinct and was committed by different people, any claim related to the acts accrued when each was committed. *See Flowers*, 310 F.3d at 1124. As a result, the only timely allegations are those that occurred after September 2013, when DeGrazia replaced Rotolo as one of the assistant general managers. *See* ECF No. 11 at ¶ 36. The defendants argue that these allegations do not support a plausible emotional distress claim because the allegations concern demotions, performance evaluations, and mere insults, which are not cognizable allegations. *See* ECF No. 17 at 17–18. I agree.

"Liability for emotional distress will not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Candelore v. Clark Cty. Sanitation Dist.*, 975 F.2d 588, 591 (9th Cir. 1992) (citations omitted). Additionally, a "simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged. Personnel management consists of such actions as hiring and firing, project assignments, promotion and demotions, performance evaluations and other similar acts." *Welder v. Univ. of S. Nevada*, 833 F. Supp. 2d 1240, 1245 (D. Nev. 2011) (citations omitted).

When DeGrazia replaced Rotolo in the fall of 2013, the bulk of Kraja's complaints concern Bellagio's failure to address past acts of discrimination, DeGrazia's write-ups of Kraja, and Kraja's eventual demotion to the Banquets C list. As pled, these acts are not "outside all possible bounds of decency" or "utterly intolerable in a civilized community." *Maduike v. Agency Rent–A–Car*, 953 P.2d 24, 26 (Nev. 1998). I therefore dismiss Kraja's emotional distress claim with leave to amend.

    **D.**    **Intentional Interference with Prospective Economic Advantage**

To state a claim for intentional interference with prospective economic advantage, a plaintiff must plausibly allege (1) a prospective contractual relationship between the plaintiff and a third party, (2) the defendant knew of the prospective relationship, (3) intent to harm the plaintiff by preventing the relationship, (4) the absence of privilege or justification by the defendant, and (5) actual harm to the plaintiff as a result of the defendant's conduct. *In re Amerco*

*Derivative Litig.*, 252 P.3d 681, 702 (Nev. 2011) (quoting *Wichinsky v. Mosa*, 847 P.2d 727, 729–30 (Nev. 1993)).

Kraja alleges that Rotolo tortiously interfered with his application to work at Caesars because Kraja's application was rejected with a note that read, "After speaking with your Manager Vincent (Rotolo) we won't be able to continue with your application." ECF No. 11 at ¶ 28. Kraja alleges that Rotolo's actions "were wrongful" but concedes that he "has been unable to discover exactly what" Rotolo told Caesars. *Id*. at ¶ 103. Because Kraja's complaint does not plausibly allege that Rotolo intended to harm Kraja or was unjustified in not recommending Kraja for the position, I dismiss this claim with leave to amend.

### III.   CONCLUSION

Accordingly, IT IS ORDERED that the defendants' **motion to dismiss (ECF No. 17) is GRANTED in part and DENIED in part**. Andi Kraja's § 1981 claims are dismissed with prejudice, leaving federal claims against Bellagio for hostile-work environment and national-origin discrimination/retaliation in connection with the work-performance test.

IT IS FURTHER ORDERED that Kraja's intentional infliction of emotional distress claim and intentional interference with prospective economic advantage claims are dismissed without prejudice and with leave to amend.

IT IS FURTHER ORDERED that if Kraja elects to file an amended complaint, he must file it within 21 days of this order. If Kraja does not file an amended complaint, then this action will proceed on his claims against Bellagio for hostile-work environment and national-origin discrimination/retaliation in connection with the work-performance test.

DATED this 25th day of July, 2016.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE