**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| ANDI KRAJA,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>BELLAGIO, LLC, a Nevada Corporation; VINCENT ROTOLO, an individual; ROE Business Organizations I-X; and DOE INDIVIDUALS I-X, Inclusive,<br><br>　　　　　　Defendants. | Case No. 2:15-cv-01983-APG-NJK<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF No. 75) |

　　　In this Title VII case, plaintiff Andi Kraja alleges that he was harassed for years and finally passed up for a food server job because he is Albanian. He sues the Bellagio Hotel and Casino, where he worked, and his supervisor there. Kraja brings claims for discrimination, hostile-work environment, and retaliation.

　　　The defendants move for summary judgment, arguing there is no triable issue as to any of these claims. I agree. Kraja's discrimination claim is predicated on him being passed up for a new job, but the undisputed evidence shows that he was treated the same as everyone else during the hiring process and, in any event, his supervisor did not even know he was Albanian. The retaliation claim fails for similar reasons: there is no evidence that Kraja did not get the job because of any protected activity he undertook. Finally, the problem with Kraja's hostile work environment claim is that the only harassment that occurred within the window of time he can still sue for is not severe enough to qualify under Title VII. Because no triable issue of fact remains for the jury, I grant summary judgment on these claims in the defendants' favor.[1]

/ / / /

---

[1] The defendants separately moved more recently for summary judgment on plaintiff's tort claims, but I will address those arguments in a separate order. ECF No. 101.

I.     **BACKGROUND**

Kraja is a Caucasian male from Albania.  In 2011, he started serving food at the Bellagio's Circo restaurant.[2]  Kraja alleges that (1) he endured years of harassment from his supervisor at Circo, and (2) long after that supervisor left, Kraja was passed up for a job at Bellagio's then-new restaurant, Lago.

**A. Kraja alleges he was harassed by his supervisor at Circo.**

Kraja testified that his supervisor at Circo, Vincent Rotolo, regularly harassed him from 2011 until the end of 2013, when Rotolo resigned.  Rotolo made a number of inappropriate comments about Kraja, loomed over him, and made fun of his heritage in front of others.[3]  Kraja complained about Rotolo's attitude several times,[4] and Bellagio investigated the complaints[5] (although the parties dispute whether these investigations were adequate).  The evidence indicates that Bellagio counseled Rotolo several times in response to Kraja's reports.[6]

In November 2013, the staff at Circo learned that the restaurant would eventually be closing and that a new restaurant, with new management, would take its place: Lago.  Although the Circo staff could apply to transfer to Lago, Rotolo decided to resign at that point.  In the meantime, Daniela DeGrazia and Doug Martin took over Circo until Lago opened in late 2014.[7]

////

---

[2] ECF No. 11 at ¶¶ 13, 14.

[3] ECF No. 75-2 at 28-40.  Defendants make much out of the fact that Kraja relies on his own "self-serving" affidavit to establish some of these facts and that Kraja "developed no evidence" other than his own affidavits.  But as I explain below, affidavits count as no less admissible than other evidence.  Moreover, if evidence is not "self-serving," it wouldn't be offered by that party; one rarely sees a party intentionally offering "other-serving" or "self-defeating" evidence.

[4] *See* ECF Nos. 75-10 (Kraja complaining to Bellagio's president), 75-14 (summary of Bellagio's internal notes about Kraja's complaints).

[5] *See* ECF Nos. 75-14 (summary of Bellagio's responses to Kraja's complaints); 75-15 (same).

[6] ECF Nos. 75-14 (stating that in response to Kraja's complaint, Rotolo was coached on his tone and how he handled employees); 75-15 (same).

[7] ECF No. 75-3 at 12-16.

Kraja admits that the harassment against him largely stopped after Rotolo left. The only incidents he alleges after that are (1) that he was disciplined for getting in an argument with his coworker (who was also disciplined), and (2) that someone put up a sign in the restaurant that said "Fat Andy."[8] When Kraja complained about the sign to the Circo's new management, they looked for it but never found it.[9]

**B. Kraja is passed up for a job at Lago, but continues working at the Bellagio.**

When Lago was finally ready to open, Kraja and the other Circo staff were given priority in the application process. Kraja's union negotiated with the Bellagio about how this process would work, and they agreed in a memorandum that it would include a written test and a verbal audition.[10] The memorandum explained that Kraja and the other Circo staff would be given several months to prepare for the test, a manual to study, and free culinary classes through a local trade academy.[11] Bellagio provided a copy of the written and verbal questions to the Union before the testing period began. The memorandum also explained how staff could pass the test and be hired at Lago: achieve a combined score of at least 75% on the two parts.[12]

Lago's general manager, Albert Najem, was the sole person to administer and score both parts of the exam (and thus the sole decision maker about who would be hired).[13] There is no evidence that Najem knew who Kraja was before the exam, there is no evidence that Najem knew Kraja was from Albania, and there is no evidence that Najem varied in the process he used to score Kraja's or any other staff member's test.[14]

---

[8] *Id.* at 40-45.

[9] *Id.*

[10] ECF No. 20.

[11] *Id.*

[12] *Id.*

[13] ECF No. 75-6 at 27.

[14] *Id.* at 24-35; *see also* ECF No. 75-2 at 90-91 (Kraja admitting that Najem never worked at Circo, that he had never met him, and that as far as Kraja knew, Najem knew "nothing about [him].").

Kraja did well on the written exam, scoring over 85% correct. But on the verbal audition, things did not go so well. Najem scored Kraja's audition as 26 out of 50 possible points.[15] Kraja could not explain how to make a Negroni. Najem asked him to explain the Lago's concept, but Kraja failed to mention key aspects of the restaurant.[16] Kraja failed to fully answer several of Najem's questions.[17] Thus, Kraja did not meet the tests' combined 75% cutoff, and he did not get the job.

Of the 22 servers who took the test at Lago, seven failed the written portion and five failed the audition—only two failed to achieve the 75% cutoff, Kraja and one other.[18] Kraja was allowed to stay on at the Bellagio in a banquet position, and he remains at the Bellagio today. Kraja filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) in May of 2015.[19] He then brought this case.

## II. ANALYSIS

### A. Summary Judgment

Summary judgment is appropriate when the pleadings, discovery responses, and other offered evidence show "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[20] When considering summary judgment, I view all facts and draw all inferences in the light most favorable to the non-moving party.[21]

If the moving party demonstrates the absence of any genuine issue of material fact, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."[22] The non-moving party "must do more than simply show that there is some

---

[15] *Id.* at 28.
[16] *Id.* at 28-44.
[17] *Id.*
[18] ECF No. 26.
[19] ECF No. 75-24.
[20] *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).
[21] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).
[22] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

1   metaphysical doubt as to the material facts."²³  He "must produce specific evidence, through
2   affidavits or admissible discovery material, to show" a sufficient evidentiary basis on which a
3   jury could find in his favor.²⁴

### A. Race Discrimination

Title VII makes it unlawful for an employer to discriminate against an employee because of ethnicity.²⁵  To prove this claim, Kraja "must offer evidence that give[s] rise to an inference of unlawful discrimination."²⁶  One way to establish this inference was set out in *McDonnell Douglas Corp. v. Green*,²⁷ which requires a plaintiff to show: (1) that he is a member of a protected class; (2) that he was qualified for his position; (3) that he was subjected to an adverse employment action; and (4) that "similarly situated individuals outside [his] protected class were treated more favorably."²⁸  If the plaintiff does this, "the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the adverse employment action."²⁹

"If the defendant meets this burden, then the plaintiff must . . . raise a triable issue of material fact as to whether the defendant's proffered reasons . . . are mere pretext for unlawful discrimination."³⁰  As an alternative to the *McDonnell Douglas* burden-shifting method, a plaintiff "may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason 'more likely than not motivated' the employer."³¹  Crucially, an employer

---

²³ *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citation omitted).

²⁴ *Bhan v. NME Hosps. Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49.

²⁵ 42 U.S.C. § 2000e–2(a)(1).

²⁶ *Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 690-91 (9th Cir. 2017) (quotation omitted).

²⁷ 411 U.S. 792, 802 (1973).

²⁸ *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) (quotation omitted).

²⁹ *Reynaga*, 847 F.3d at 690-91.

³⁰ *Id.* (quotation omitted, second alteration in original).

³¹ *Id.*

is generally imputed with discriminatory intent only if the person who took the adverse action against the plaintiff can be imputed with that intent.[32]

Kraja's discrimination claim hinges on one adverse action: him not getting the job he wanted at Lago. But Kraja has not offered evidence establishing a prima facie case on this point, and even if he had, he offers no evidence showing that Bellagio's proffered reason for not hiring him (that he failed the test) was pretext. As to his prima facie showing under the *McDonnell Douglas* framework, there is no question that as an Albanian, Kraja is a member of a protected class. There is also no question that Kraja suffered from an adverse employment action because he did not get the job he wanted. But he cannot show either that he was qualified for the Lago position or that similarly situated, non-Albanian applicants were treated more favorably.

Kraja puts forth no evidence that non-Albanian applicants were treated better than he. Kraja admitted in his deposition that he does not know the ethnicity of the other applicants who passed the test; he does not even know whether other Albanians passed the test.[33] And he provides no other evidence establishing these facts that might allow him to meet his prima facie burden. On the other hand, the defendants' uncontroverted evidence shows that Kraja was treated the same way as every other applicant: each took the same test and each who achieved a passing score got a job. Some, like Kraja, did not pass and thus did not get a job. But there is no evidence that anyone was treated differently.[34]

Even if Kraja had established others were treated differently, he has not created a triable issue as to whether he was qualified for the job. To qualify as a Lago server, Kraja had to meet

---

[32] *See Fahnestock v. Waggoner,* 2017 WL 74737, at *2 (9th Cir. Jan. 9, 2017) ("The only evidence of discriminatory motive relates to Waggoner, but Waggoner left months before Fahnestock was terminated. Nor is there any evidence that Toomey was 'simply carr[ying] out the will of' Waggoner when terminating Fahnestock.") (citation omitted).

[33] ECF No. 75-2 at 93-94.

[34] Kraja argues that the Bellagio is the one who failed to provide affirmative evidence that other applicants were actually scored in the same way as he was. But this argument misstates the burdens in play. Kraja has the burden of affirmatively coming forward with evidence that he has met each of the elements of a prima facie case, and the Bellagio is entitled to summary judgment if it can point to fatal deficiencies in Kraja's showing.

the requirements of the deal his union negotiated with the Bellagio: achieve a combined score of 75% on the exam. Kraja did not attain that score, so he was not qualified for the position.[35]

Finally, even if Kraja had demonstrated a prima facie case, he cannot show that Bellagio's non-discriminatory reason for denying him the job is pretext. Bellagio says that Kraja did not get the Lago job because he failed his exam. Kraja counters that I should discount that explanation because he has pointed out some flaws in the test (such as that the applicants were asked questions about dishes not discussed in the training materials and that Kraja gave answers that should have been good enough). But whether the test was good or bad is of no matter; the fact remains that there is no evidence that Najem administered or scored Kraja's test with a discriminatory intent.[36] In other words, everyone took the same test, for better or worse. In fact, there is no evidence that Najem, the sole decisionmaker, even knew Kraja was Albanian. This is another reason Kraja's claim fails.[37]

Kraja failed to put forth a prima facie discrimination case, and he failed to show that Bellagio's non-discriminatory reason for passing on him was pretext. I thus grant summary judgment to defendants on this claim.

/ / / /

/ / / /

---

[35] Kraja spends a significant portion of his brief arguing that he should have received a better score on certain questions, so in fact he was qualified for the position. For example, he says that when he told Najem during the audition that the concept of a tapas restaurant is "family style" eating, that should have been good enough to earn him a point. But the memorandum stated the requirements of the job requires a 75% score as graded by the Lago manager. And Kraja did not achieve that. In any event, as explained below, even if he should have been received a higher score, that does not mean that Bellagio's reliance on the test was pretext.

[36] The only theory Kraja provides is that some people at the Bellagio at the time Najem scored his audition knew of Kraja's past incidents with Rotolo and Kraja's complaints about him. To credit this theory would require multiple leaps of logic. A jury would have to assume that these other people at Bellagio told Najem about Kraja, which there is no evidence to support. Then a jury would have to assume that just because Najem was told about Kraja's past incidents or his Albanian heritage, that Najem decided to discriminate against Kraja because of his heritage, too.

[37] *DeHorney v. Bank of Am. Nat. Trust & Sav. Ass'n*, 879 F.2d 459, 468 (9th Cir. 1989).

**B. Retaliation**

To establish a prima facie case of retaliation, Kraja must show that: (1) he engaged in a protected activity under Title VII, (2) defendants subjected him to an adverse employment action, and (3) there is a causal link between the two.[38] As with a discrimination claim, if the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate, non-retaliatory reason for the adverse employment action.[39] If the employer meets this burden, then the plaintiff bears the burden of showing that the employer's proffered reason is pretextual.[40]

Kraja's retaliation claim fails because, again, there is no evidence that he was passed up for the Lago job for an improper reason. The adverse employment action Kraja points to is not getting the Lago job, but there is no evidence that this action is connected to the protected activities he carried out (filing discrimination complaints). There is no evidence that the sole decision maker who passed on Kraja, Najem, knew of these prior complaints that were filed almost two years prior.[41] There is not even any evidence that Najem knew who Kraja was.

Kraja thus has not created a triable issue as to whether his failure to get the job was casually linked to his protected activities of complaining about discrimination. I must grant summary judgment to the defendants on this claim.

**C. Hostile Work Environment**

Finally, Kraja's hostile work environment claim must fail as well. The only harassment that Kraja points to (that could possibly rise to the level of a hostile work environment) was carried out by Rotolo. Rotolo left the Bellagio in 2013, and Kraja did not file his discrimination charge until 2015. Kraja's claim is barred by Title VII's 300-day statute of limitations.[42]

---

[38] *Reynaga*, 847 F.3d at 693.

[39] *Id.*

[40] *Id.*

[41] *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (three-month gap between activity and adverse action insufficient to prove retaliation).

[42] *See* 42 U.S.C. § 2000e–5(e).

Kraja tries to overcome this bar by arguing that the hostile work environment Rotolo created was carried on by other managers at the Bellagio, thus creating a single hostile work environment that continued into the actionable time period. Generally, "discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period."[43] Hostile work environment claims are difficult to fit into this rubric, because they require a plaintiff to show a series of acts that, perhaps unactionable individually, create a discriminatory environment as a whole.[44] Thus, if the acts culminating in the hostile work environment began before the time-bar for filing a claim—but the same hostile work environment continued into the filing period—courts have allowed the plaintiff to sue.[45] The question becomes whether the timely harassment is "part of the same actionable hostile environment" that existed previously.[46]

Kraja argues that the later incidents (his write up and the "Fat Andy" sign) are connected to Rotolo's harassment because the "hostile work environment began with . . . Rotolo and proceeded through his successive managers" who "worked together or knew each other." But that Kraja's later managers worked with or knew Rotolo is not enough to prove that their harassment was all part of the same actionable scheme. The only harassment that Kraja points to that fell within the actionable time period has nothing to do with Kraja's ethnicity, it occurred long after Rotolo left the Bellagio, and all of the actors are different. Moreover, there is no evidence that Kraja's ethnicity played a factor in his being written up for arguing with his coworker (nor is that even actionable harassment), and there is no evidence that his ethnicity played a factor in someone putting up the sign.[47]

---

[43] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002).

[44] *Id.*

[45] *Id.* at 118.

[46] *Id.* at 120.

[47] And without evidence that this sign was related to Kraja's ethnicity, or that Bellagio is responsible for failing to properly address the situation, it would not be actionable anyway. *See Lesane v. Aloha Airlines, Inc.*, 226 F. App'x 693, 697 (9th Cir. 2007).

Kraja offers evidence that Rotolo disparaged him because he is Albanian.[48] But there is no basis to connect Rotolo's harassment with the only incidents that Kraja can still sue for. And in any event, the comments Rotolo made, though deplorable, would not constitute "severe and pervasive" harassment.[49] For all of these reasons, I must grant summary judgment on Kraja's hostile work environment claim.

### III.  CONCLUSION

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment **(ECF No. 75) is GRANTED**.

DATED this 31st day of March, 2017.

                                      ANDREW P. GORDON
                                      UNITED STATES DISTRICT JUDGE

---

[48] Defendants contend that Kraja cannot meet his burden on summary judgment based only on his own self-serving testimony, but a reasonable jury could rely on Kraja's testimony to find that Rotolo harassed him based on his ethnicity.

[49] Kraja says that Rotolo made several isolated comments to him, mostly on single occasions, such as saying that Albanians are "thieves." This is not enough to state a severe and pervasive hostile work environment. *See Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998); *see also Brooks v. City of San Mateo*, 229 F.3d 917, 927 (9th Cir. 2000).