# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ANDI KRAJA, | Case No. 2:15-cv-01983-APG-NJK |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| BELLAGIO, LLC, a Nevada Corporation; VINCENT ROTOLO, an individual; ROE Business Organizations I-X; and DOE INDIVIDUALS I-X, Inclusive, | (ECF No. 101) |
| Defendants. | |

Plaintiff Andi Kraja alleges that he was harassed and passed up for a food server job at the Bellagio Hotel and Casino because he is Albanian. He brought various claims against the Bellagio and his supervisor. I previously granted summary judgment on Kraja's Title VII claims. Now I address his remaining claims of intentional infliction of emotional distress ("IIED") and intentional interference with a prospective business relationship.

I dismissed Kraja's IIED and interference claims once before because they were not adequately supported;[1] discovery and an amended complaint have not changed that. The IIED claim requires Kraja to show that the defendants acted "beyond the bounds of human decency." But Kraja points only to an incident where a sign labeled "Fat Andy" (presumably a reference to him) was left in the restaurant where he worked. As a matter of law, this incident falls short of an IIED claim.

The intentional interference claim requires Kraja to show that the defendants intentionally interfered with his prospective business relationship. On this point, Kraja alleges that a different hotel denied him a job because of something Kraja's boss at the Bellagio had said. No reasonable

---

[1] ECF No. 64.

1  jury could rely on this lone piece of evidence to find that the defendants intentionally interfered

2  with Kraja's ability to get a different job.

3     Because no triable issue of fact remains for the jury, I grant summary judgment on these

4  claims in the defendants' favor.

5  **I.     BACKGROUND**

6     In 2011, Kraja began serving food at Bellagio Hotel and Casino's Circo restaurant.[2]  He

7  alleges that over the following several years he was repeatedly bullied and harassed by his

8  supervisor, Vincent Rotolo.  I discussed those allegations at length in my prior orders[3] so I will

9  not repeat them here.  Only two incidents matter for purposes of Kraja's remaining IIED and

10  intentional interference claims: (1) in 2013, Kraja was denied a job at another hotel because of

11  something Rotolo allegedly said, and (2) in 2014, defendants refused to take down a sign labeled

12  "Fat Andy" that someone had put up in Circo's serving area.

13     **A. Kraja is rejected for a job at another hotel.**

14     In early 2013, while still at the Bellagio, Kraja applied to work at Caesars Palace Hotel

15  and Casino.[4]  After interviewing, Kraja received a vague email from Caesars rejecting him and

16  suggesting that his manager at the Bellagio might have something to do with it: "[a]fter speaking

17  to your manager Vincent [Rotolo] we won't be able to continue with your application."[5]  Kraja

18  admits that he has no evidence of what Rotolo might have said to Caesars: "Q: Do you know

19  what [Caesars] heard from [your manager]? Plaintiff: I have no idea. Q: You have no idea. Do

20  you know anything else about this sentence that he says, 'We won't be able to continue with

21  your application?' Plaintiff: I have no idea."[6]  Kraja's manager testified that he never told

22

23

---

24     [2] ECF No. 82.

25     [3] ECF Nos. 64, 125. Kraja originally based his IIED claim on additional events, but I
    rejected those theories in my prior order. ECF No. 64.

26     [4] ECF No. 82-3.

27     [5] *Id.*

28     [6] ECF No. 101-2 at 9.

1  Caesars anything negative about Kraja.[7]  There is no other evidence suggesting that anyone at

2  Bellagio ever spoke to Caesars or did anything else to interfere with Kraja's job prospects there.

3  **B. The defendants fail to take down a sign labeled "Fat Andy" in the Circo.**

4  About a year later, Kraja alleges that someone put up a sign in the Circo's serving area

5  with the words "Fat Andy" written on it.[8]  Kraja testified that he asked his supervisors to take the

6  sign down multiple times, but they failed to do so.[9]  Kraja adds that he was embarrassed by the

7  sign, and that his coworkers teased him about it.[10]

8  II.  <u>ANALYSIS</u>

9  **A. Summary Judgment**

10  Summary judgment is appropriate when the pleadings, discovery responses, and other

11  offered evidence show "there is no genuine issue as to any material fact and that the movant is

12  entitled to judgment as a matter of law."[11]  When considering summary judgment, I view all facts

13  and draw all inferences in the light most favorable to the non-moving party.[12]

14  If the moving party demonstrates the absence of any genuine issue of material fact, the

15  burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine

16  issue for trial."[13]  The non-moving party "must do more than simply show that there is some

17  metaphysical doubt as to the material facts."[14]  He "must produce specific evidence, through

18

19

20

21

---

22  [7] ECF No. 101-3 at 4-5.

23  [8] *Id.* at 40-45.

    [9] ECF No. 105-2 at 3-4.

24  [10] *Id.*

25  [11] *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

26  [12] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

27  [13] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

    [14] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citation omitted).

28

affidavits or admissible discovery material, to show" a sufficient evidentiary basis on which a jury could find in his favor.[15]

## A. Kraja's intentional interference claim

To state a claim for intentional interference with prospective economic advantage, a plaintiff must prove: "(1) a prospective contractual relationship between the plaintiff and a third party, (2) the defendant knew of the prospective relationship, (3) intent to harm the plaintiff by preventing the relationship, (4) the absence of privilege or justification by the defendant, and (5) actual harm to the plaintiff as a result of the defendant's conduct."[16]

Kraja provides some evidence that he had a prospective relationship with Caesars, that Rotolo knew of that relationship when Caesars called him for a reference, and that Rotolo harmed this relationship given that Caesars told Kraja he wasn't getting the job because of something Rotolo said. But there is little evidence from which a jury could conclude that Kraja said anything unprivileged and unjustified to Caesars or that Rotolo intended to prevent Kraja from getting the Caesars job. Kraja has no evidence about what Rotolo actually said when Caesars contacted him. Indeed, the only direct evidence is testimony from Rotolo, who says he never spoke with Caesars, and a Caesars representative, who says no one remembers talking to Rotolo.

Kraja's argues that because Rotolo had been rude to him in the past, and because an email indicates that Caesars had spoken to Rotolo, a jury could conclude that Rotolo said something unjustified to Caesars and intended to prevent Kraja from getting the job. But this is too big of a leap for any reasonable jury to take. Indeed, I previously dismissed this claim on the same grounds, and Kraja offers no new evidence to change my mind.[17] No reasonable jury could find

---

[15] *Bhan v. NME Hosps. Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49.

[16] *In re Amerco Derivative Litig.*, 252 P.3d 681, 702 (Nev. 2011) (quoting *Wichinsky v. Mosa*, 847 P.2d 727, 729–30 (Nev. 1993)).

[17] ECF No. 64 at 14 ("Kraja alleges that Rotolo tortuously interfered with his application to work at Caesars because Kraja's application was rejected with a note that read, 'After speaking with your Manager Vincent (Rotolo) we won't be able to continue your application.' . . . Kraja . . . concedes that he 'has been unable to discover exactly what' Rotolo told Caesars. . . . Because

that Rotolo made unjustified remarks intended to prevent Kraja from getting a job based solely on the fact that Rotolo had been rude to Kraja in the past. Rotolo is just as likely to have told Caesars a justified statement (such as that Kraja had a write-up for an incident with his coworker) than an unjustified one. Kraja would be asking a jury to find that Rotolo lied or made some other unjustified statement simply because Rotolo was rude to him. That is not enough evidence for a reasonable jury to do anything more than speculate.[18] I must therefore grant summary judgment on this claim.

**B. Kraja's IIED claim**

An IIED claim requires: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress, and (3) actual or proximate causation."[19] Defendants confine their challenge to the first prong of this test: whether the defendants' failure to take down the "Fat Andy" sign is "extreme and outrageous."[20]

"[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community."[21] "Liability . . . will not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'"[22] Screaming vulgar insults at employees is generally not enough;[23] even threats and demeaning curses are often not enough.[24]

---

Kraja's complaint does not plausibly allege that Rotolo intended to harm Kraja or was unjustified in not recommending Kraja for the position, I dismiss this claim.").

[18] Also, if Rotolo disliked Kraja as much as Kraja contends, one might expect that Rotolo would prefer that Kraja be hired by another hotel.

[19] *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999).

[20] Kraja concedes that the other facts he alleged to support his IIED claim are insufficient.

[21] *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (per curiam); *see also Star v. Rabelto*, 625 P.2d 90, 91-92 (Nev. 1981).

[22] *Candelore v. Clark Cty. Sanitation Dist.*, 975 F.2d 588, 591 (9th Cir.1992) (citations omitted).

[23] *See, e.g., Schneider v. TRW, Inc.*, 938 F.2d 986, 992 (9th Cir. 1991).

[24] *See, e.g., King v. Burns,* 588 F. Supp. 1152, 1154-57 (D. Colo. 1984).

I must view the evidence in Kraja's favor, and I thus credit his testimony that the defendants were told about the sign and failed to remove it for several months. The thrust of Kraja's argument is that either the sign itself was extreme and outrageous, or the defendants' failure to take it down for several months was.[25] But while leaving the sign up was offensive and distasteful, no reasonable juror could find it "extreme and outrageous." Kraja fails to point to any analogous cases where courts have found similar (or even remotely similar) conduct to be "extreme and outrageous." All of the cases Kraja relies upon addressed far worse conduct.[26] I thus grant summary judgment in favor of the defendants on this claim.

### III.    CONCLUSION

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment **(ECF No. 101) is GRANTED**.

DATED this 27th day of April, 2017.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[25] The defendants contend that if the sign is not extreme and outrageous, their failure to take it down cannot be either. I disagree. There is a meaningful difference between someone failing for a day to take down an offensive sign, and someone failing for months—after repeated complaints—to take down the same sign. That said, even this failure is not enough to state a claim for IIED in Nevada.

[26] *See, e.g., Burke v. State Dept. of Children & Families,* 2010 WL 797286 (Conn. Super. Ct. Feb. 2, 2010) (denying motion to dismiss IIED claim where the defendant shoved the plaintiff, insulted her mother who had recently suffered a massive stroke, filed false charges against her, and then kicked her).